AUGUST MEYER, PLAINTIFF IN ERROR, V. JEROME SHAMP, DEFENDANT IN ERROR.

[FILED JUNE 13, 1889.]

| 26 | 729 |
| 45 | 684 |
| 26 | 729 |
| 51 | 428 |
| 26 | 729 |
| 62 | 323 |

1. **Res Adjudicata.**   A judgment or ruling of this court in a case or point distinctly and finally made will be held to be the law of the case in which made throughout its course of litigation; without regard to the number of times it may be brought before the court, or to the intrinsic merits of such judgment or ruling. (*Hiatt v. Brooks*, 17 Neb. 33; *Leighton v. Stuart*, 19 Id. 546; *Marion v. State*, 20 Id. 247; *Lane v. Starkey*, Id. 586.)

2. **Partnership:** GUARANTY: ACTION: PLEADING.   D. W. & S. were a firm owning goods and carrying on a business and owing partnership debts.   S. sold out his interest to G., whereupon and in consideration of such sale, the new firm of D. W. & G. guaranteed to pay all the debts of the old firm of D. W. & S. and keep S. harmless in respect thereto.   Afterwards, W. sold out his interest to N., whereupon and in consideration of such sale, the new firm of D. N. & G. guaranteed to pay all the debts

of the firm of D. W. & G. and keep W. harmless in respect. thereto. Afterwards, the firm composed of D. N. & G., by the name and designation of D. N. & Co., sold to M. a one-fourth interest in said goods and business, whereupon said new firm of D. N. G. & M. guaranteed to pay all the debts and liabilities. of the said preceding firm of D. N. & Co. Afterwards D. sold his interest in said goods and business to said M. N. & G., who guaranteed to pay all the debts and liabilities of the said firm of D. N. & Co. and to keep D. harmless in respect thereto, in-cluding all the debts and liabilities above mentioned. After-wards the said last firm of N. G. & M. was dissolved by the withdrawal of G., in consideration of which N. & M. guaran-teed to pay all the debts and liabilities above mentioned; and afterwards the remaining firm of N. & M. dissolved, M. retain-ing all the property and effects of the said partnership, and in consideration thereof guaranteeing to pay all the debts and liabilities of said last-named partnership, including the debts. and liabilities above described. None of said several firms paid all of the debts of the original firm of D.W. & S.; but after the sale by W. to N., certain of the said debts remaining unpaid, S. and W. were obliged to pay and did pay them. In an action by S. in his sole name against M. on his guaranty to pay said debts and keep him, S., harmless in respect thereto, *held*, that the petition without an allegation of the payment of such debts and liabilities by S. and W. and the assignment of his interest in such payment by W. to S., is insufficient.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Sawyer & Snell*, for plaintiff in error, cited: *Meech v. Ensign*, 44 Am. Rep. 227; *Kountz v. Holthouse*, 85 Pa. St. 235; *Robb v. Mudge*, 14 Gray, 534; *Tweddle v. Atkin-son*, 1 B. & S. 393; (S. C. 101 Eng. Com. Law 392;) *Carr v. Bank*, 107 Mass. 45; *Hall v. Huntoon*, 17 Vt. 244; 2 Wharton on Contracts, sec. 787; Lindley on Partnership, p. 392; *Austin v. Seligman*, 18 Fed. Rep. 519; *Johnson v. Morgan*, 68 N. Y. 497; *Parmalee v. Wiggenhorn*, 6 Neb. 326.

*Cornish & Tibbetts*, and *O. P. Mason*, for defendant in error, cited: Bates on Partnership, 634; *Smith v. Teer*, 21

Up. Can. Q. B. 412; *Carr v. Roberts*, 5 B. & Ad. 78; *Smith v. Howell*, 6 Exch. 730; *Pope v. Hays*, 19 Tex. 375; *Bennett v. Caldwell's Exr.*, 70 Pa. St. 253.

COBB, J.

This cause was before this court, on error to the district court of Lancaster county, at a former term. A general demurrer to the petition had been sustained, and the cause dismissed. The opinion of this court, reversing the judgment of the lower court and remanding the cause for further proceedings, is to be found in volume 20, p. 223. The cause was tried to a jury, with a verdict and judgment for the plaintiff, and is now brought up by proceedings in error by defendant, who by brief and argument of counsel presents eighteen points of error.

The first four points are devoted to the review of the question decided in the former opinion above referred to.

In the case of *Hiatt v. Brooks*, 17 Neb. 33, we held (following *Phelan v. San Francisco*, 20 Cal. 45) to the effect that a previous ruling or judgment of this court upon a point distinctly made, would be held to be the law of the case in which made, throughout its course of litigation, without regard to the number of times which it might come before the court, or to the intrinsic merits of such ruling or judgment. This holding was adhered to in the subsequent cases of *Leighton v. Stuart*, 19 Neb. 546; *Marion v. State*, 20 Id. 247, and *Lane v. Starkey*, Id. 586; and is believed to be the law. The points above referred to, therefore, being within the former ruling and opinion, will not be examined here.

The fifth, sixth, seventh, eight, and ninth, points of the brief are based, at least in great part, upon the giving of of the eighth instruction by the court on its own motion. I here copy the instruction :

"If you find from the evidence that Wallingford &

Shamp paid any of the sums sued upon, and that prior to the commencement of this action Wallingford sold his interest to the plaintiff, then the plaintiff would have the same rights in the premises as though he had paid the debts himself."

The objection of counsel to this instruction is based upon the fact that it is not alleged in the petition that Wallingford & Shamp paid any of the sums sued upon, and that Wallingford afterwards sold his interest therein to the plaintiff; but, on the contrary, it is alleged in the petition that neither the defendants, Dawson, Geisler, Wallingford, nor either of said co-partnerships, had or have paid said indebtedness, nor any part thereof, and that plaintiff had been compelled to pay all of said indebtedness and obligations. And counsel contend that proof to the effect that this indebtedness was paid by Wallingford & Shamp, and that Wallingford had assigned to plaintiff his interests therein, does not meet the allegation that plaintiff alone had paid it.

By reference to the petition, set out at length in the former opinion, and reported in the case above referred to, the allegation will be found be that, "On the 9th day of November, 1880, the plaintiff sold all of his interest in said partnership to one John Geisler, the firm of Dawson, Wallingford & Geisler assuming and agreeing to pay all of said debts and save the plaintiff harmless; that in December, 1880, said Wallingford sold and transferred his interest in said firm to Dawson, Geisler, and one C. Nahrung, in part consideration of which, said three persons agreed to pay all the debts of Dawson, Wallingford & Geisler, and save said Wallingford harmless;" with other subsequent sales and transfers by the several persons and partners therein named, with like assumptions and guaranty on the part of the purchasers and remaining owners and partners until and by means of which the defendant became the sole owner and guarantor. The plaintiff and Wallingford were, nevertheless, still bound to the creditors of the original firm of

Dawson, Shamp & Company. And so if upon the failure of the guarantors to pay any of said guaranteed indebtedness, the plaintiff and Wallingford paid the same, it became a *chose* in action in their hands against the guarantors, and finally against the defendants as sole guarantors. Such *chose* in action was assignable from Wallingford to the plaintiff, and, being so assigned, could be sued on by him in his sole name as the lawful owner and holder thereof; and in that case as a matter of pleading it was necessary to set out its payment by plaintiff and Wallingford, and the assignment by Wallingford of his moiety to plaintiff. But the point urged by plaintiff in error is that there is no allegation of payment by plaintiff and Wallingford in the petition; nor if they did pay any of said indebtedness, that the interest of Wallingford therein, or to be repaid therefor by his grantee and guarantor, or those claiming under him, ever passed to the plaintiff by assignment; that, therefore, the above instruction was not only inapplicable to the pleadings, but that the evidence of the payment of any part of said indebtedness by Wallingford & Shamp, or Wallingford, Shamp & Company, was inadmissible for the want of pleadings on which to base the same; and that all such evidence, being admitted over defendant's objection, was erroneously admitted; and that for such error, as well as that of the giving of the above instruction, the judgment ought to be reversed.

It appears by the bill of exceptions that the plaintiff, being on the stand as a witness in his own behalf, and having testified as to the sale by him to Mr. Geisler of his share and interest in the partnership property and business, the sale by Wallingford to Mr. Nahrung, of his share and interest in the said partnership property and business, and the terms of such sales, including that the purchasers assumed all the indebtedness and liabilities of the firm; also of the purchase by the defendant of a one-fourth interest of the property and business of the partnership, etc., and hav-

ing testified that at the time of the said several sales, purchases, and assumptions, the old firm of Dawson, Shamp & Co., was indebted to the La Belle Wagon Company as security upon a note of one Peter Davey, a note and check being exhibited to him, testified that the note was given for a wagon, and that the check was given for the note; that the note was given by Peter Davey, and was paid by plaintiff; that it was one of the notes which the firm he sold out to, agreed and undertook to pay. Plaintiff then offered the check in evidence, to which defendant objected, for the reason that it was not the check of the plaintiff, but of Wallingford, Shamp & Company, etc.,which objection was overruled and the check admitted in evidence. Witness being shown another paper, was asked what it was given for, and replied that it was given for an indorsement —indorsed paper of the R. E. Elwood Manufacturing Company; that it was an indebtedness of the firm of Dawson, Shamp & Company at the time plaintiff sold out his interest; that it was one of the debts that the firm agreed to pay, and that the plaintiff subsequently paid it. Witness continued : (I copy his testimony from the bill of exceptions:)

This was the note that Burr protested. That was paid; it had not been paid. We took up that indebtedness with that amount, $157.

Q. With that check?

A. With that check, yes.

Q. Who has paid that?

A. I have paid it.

Q. You individually?

A. Yes, sir.

The check being offered in evidence, defendant objected for the reason that it shows that it was drawn in favor of F. E. Hills or bearer, and drawn by Doolittle, Shamp & Company, and other reasons. The objection was overruled, and the evidence admitted.

The examination was continued:

Q. Look at the paper I now hand you and state what the money was applied for.

A. This was applied on a Peru planter.

Q. Was that one of the debts existing against the firm of Dawson, Shamp & Company at the time you sold out?

A. Yes, sir.

Q. I will ask you if that is one of the notes that the parties to whom you sold out assumed to pay?

A. Yes.

Q. By whom was it paid?

A. That note was paid by me.

Q. Is that the check on which the money was paid?

A. Yes.

Plaintiff offered check in evidence. Defendant objected for the reason that the check was drawn by Wallingford, Shamp & Company, and not by the plaintiff, etc., which objection was overruled and the evidence admitted. The witness testified to other payments of the same general character.

Upon cross-examination the plaintiff recapitulated and reënumerated the several debts guaranteed by defendant, and which had been paid by him. Referring to the first in order of these debts, defendant asked:

Q. Who paid that?

A. This we paid, I think. I and Wallingford paid these notes.

Q. I want to know whether you, or you and Wallingford?

A. Well, this note I think we paid together.

Q. You paid it as Wallingford & Shamp—as a company?

A. Yes, sir; not as a company, but I and him individually.

Q. Together then, but not as a company?

A. Yes, sir.

Q. The next item?

A. Frederick Witte.

Q. How much?

A. Thirty dollars.

Q. Paid by Wallingford & Shamp?

A. Yes.    *    *    *

Q. Well?

A. One hundred and fifty-seven dollars to F. E. Hills, for the Elwood Manufacturing Company, May 12, 1883.

Q. That was paid by Wallingford & Shamp?

A. Yes; if there is any difference I will state. Ninety-five dollars and seventy six cents, October 4, 1882, to J. H. Brown, Justice of the Peace, for La Belle Wagon Company. Magnus Lawson, eighty dollars; * * * check to Harwood, Ames & Kelly for thirty-seven dollars and sixty cents, for Hunt, Dunn & Co.; nineteen dollars to J. T. Clark, for T. H. Smith; to L. C. Burr, twenty-seven dollars and fifty cents; the La Belle Wagon Company, or B. F. Moore, two hundred and sixty dollars.

Q. All these items were paid by Wallingford & Shamp?

A. At the time my recollection is they are; perhaps not all of them; I cannot refresh my memory sufficiently to say whether or not one or two were paid by myself without looking up the matter.    *    *    *

Q. After Wallingford had paid this you say you bought?

A. Why, yes; Wallingford assigned his claim to me— that is, verbally.

Q. Verbally?

A. Yes.

Q. Was it all in talk he assigned over to you?

A. Yes, sir.

Q. When was the assignment made?

A. Well, that I cannot say. It was before this suit was brought. About the time the suit was brought, I think. * * * * It was an agreement that I should take

the entire indebtedness. He owes me for it and I owe him.

The record then appears to me to be open and subject to the objection made to it by the counsel for the plaintiff in error. While I do not doubt that with the necessary allegation of payment by Shamp & Wallingford, and of the assignment of the claim for repayment thereof under the guarantys of the said contracts of purchase by Wallingford to Shamp, the action could be maintained, yet without such allegations in the petition, I do not see that either the instruction above set out, or the admission of the testimony objected to, can be sustained.

The judgment of the district court is therefore reversed, and the cause remanded to that court for further proceedings in accordance herewith, and with instructions to that court to allow the plaintiff to amend his petition as he may be advised.

JUDGMENT ACCORDINGLY.

THE other Judges concur.