No. 14,728.

Johnston, Sheriff et al. *v.* First National Bank of Otis et al.

(115 P: [2d] 56)

Decided June 9, 1941. Rehearing denied June 30, 1941.

Messrs. HODGES, VIDAL & GOREE, Mr. JOSEPH G. HODGES, for plaintiffs in error.

Mr. FRANK D. ALLEN, Mr. LEONARD E. ANDERSON, Mr. C. H. ANDERSON, for defendants in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

AN action in replevin was brought by the First National Bank of Otis, Colorado, a banking corporation, against Rufus A. Johnston, sheriff of Morgan county, to recover possession of forty head, more or less, of red white-faced 1937 spring calves branded two bar seven on the left hip, which were held by the sheriff under levy of execution against C. V. Owens and E. H. Owens in favor of the First National Bank of Fort Morgan. Judgment was rendered in favor of plaintiff and defendant bank seeks a reversal thereof.

The Otis bank held two notes of one Rex O. Howlett in the aggregate amount of $1,758.80, secured by a chattel mortgage on seventy-four 1937 calves, and other property. At the time the mortgage was executed Howlett owned eighty-seven or eighty-eight 1937 calves similarly branded. The description as it appeared in the mortgage is as follows:

"1 Red White Faced Hereford Bull, age 3 years $100.
4 1937 Red Calves $70.
74 Red White Faced 1937 Spring Calves $1260.
1 Holstein Cow 9 $25.
16 Red and Roan Cows 2 to 8 $480.
22 Red White Faced Cows 2 to 6 years old $800.

"Also any other cattle that I own and not described in the above.

"The above cattle are branded 2/7 on left hip. now located and to be kept on the S½ of Section 20, Township 1 N, Range 50W, Washington County, Colorado."

On Saturday, February 26, 1938, Howlett sold from his farm, located as in the mortgage described, eighty-seven head of red white-faced 1937 calves branded two bar seven on the left hip to C. V. Owens; gave him a bill of sale therefor and received from him a draft upon C. V. Owens and Sons Auction Sales Commission Company for the sum of $1,950, payable through the Fort Morgan bank. The account of the Owens company was overdrawn $3,000 at this bank and it otherwise was indebted to it in the sum of $9,712.79, upon which indebtedness the bank on February 17, 1938, had procured judgment, and on February 23, 1938, had sued out an execution and placed it in the hands of defendant Johnston, the sheriff of Morgan county, for levy. Howlett did not disclose to Owens that the calves were mortgaged. The Otis bank had no actual knowledge of the sale until Howlett brought in his draft, which it immediately forwarded for collection. It did not credit the amount of the draft on Howlett's notes and the draft on presentation by the Fort Morgan bank was dishonored

by the drawee. It was returned to the Otis bank unpaid and never has been paid. At the end of the draft proper appeared the words, "We request prompt deposit for collection." Upon return of the draft, dishonored, the Otis bank instituted an action in replevin against the sheriff of Morgan county, who had levied on the cattle by virtue of the aforesaid execution.

The Otis bank set out in its complaint in replevin its mortgage, alleged its interest thereunder, and that the mortgage provided that if the property therein conveyed should be attached or claimed by another person the mortgagee might immediately foreclose, take possession of the property, sell it, and apply the proceeds to the payment of its notes.

By stipulation of the parties the Fort Morgan bank was made a party defendant, and on petition of plaintiffs, Howlett was made a party.

Howlett in his answer and counterclaim, among other things, alleged that he agreed to sell the cattle but that the sale was for cash and that it was never consummated by reason of the fact that, being for cash and the draft being dishonored, title to the cattle never passed. An issue was joined on this allegation by plaintiff's replication.

Defendants contended, also, that the mortgage was void because the description of the property therein was insufficient to enable it to be identified. They also asked for a marshalling of Howlett's assets and that the Otis bank be required first to have recourse to its mortgage security other than the calves here involved. In the view the trial court took of the case, in which we concur, this phase of the litigation requires no consideration here.

There is no evidence of any express consent of the Otis bank that Howlett might sell the calves to Owens nor that it had knowledge that he had done so until he brought in the draft the evening of the day of the sale to be forwarded for collection. It was disclosed by the

evidence that Howlett on former occasions had sold cattle and taken the check or proceeds of such sale to the Otis bank without previously notifying it that such sales were to be made, and without informing the buyers that the stock sold was mortgaged. Whether the manner in which the Otis bank and Howlett had conducted their business with respect to the sale of property mortgaged to the bank without notice to the latter under the factual situation here involved amounted to a waiver of the mortgage lien we need not, and do not, determine, because that question is not material to a disposition of the case under the theory adopted by the trial court and which we accept.

Clearly, defendant Howlett had rightful possession of the calves when he agreed to sell them for cash, and Owens obtained a bill of sale and possession of them by means of the worthless draft which he issued. By such sale without the consent of the Otis bank, if it did not consent either expressly or impliedly, the mortgage was breached and the Otis bank became entitled to the immediate possession of the property.

There is no question that the calves sold to Owens and those replevied were the same. We are of the opinion that the trial court was right in holding that the sale by Howlett was a cash sale and that title did not pass to Owens by virtue of his having given the dishonored draft. Owens' transaction with Howlett being such that he acquired no title, it follows that the levy attached to no greater interest in the calves than Owens possessed, which was none at all. It is immaterial to defendants Johnston and the Fort Morgan bank what the respective rights of Howlett and the Otis bank between themselves were under the mortgage. If the instrument was valid and no consent was expressly or impliedly given to make the sale, the Otis bank is entitled to possession by virtue of the breach of its mortgage, the property having been levied upon and claimed by another. If the Otis bank expressly or impliedly con-

sented to the sale and thereby voided its mortgage so that Howlett could sell and transfer title to the property, Owens received no title by the giving of the dishonored draft in lieu of cash in a cash sale, and the right of possession remained in Howlett. Both Howlett and the Otis bank were parties, so whatever the true factual situation, it avails defendants nothing. There being no dispute that the calves replevied and those sold to Owens were identical, the question of the sufficiency of description in the mortgage is immaterial.

In *First State Bank v. Kohl*, 79 Colo. 620, 247 Pac. 571, we held that title to corn delivered to the purchaser on a sale understood to be for cash but payment for which was by checks subsequently dishonored did not pass, and that replevin by the seller to recover the corn would lie. We further held that there was a presumption that the checks were not received as payment and numerous Colorado authorities were cited in support of such holding.

The case of *Ilfeld v. Ziegler*, 40 Colo. 401, 91 Pac. 825, was an action against the purchaser from the mortgagor for the conversion of property included within a chattel mortgage which property was sold by the mortgagor in antagonism to the mortgage. We held that it could be maintained.

In *Western Finance and Development Co. v. Fisher*, 72 Colo. 121, 210 Pac. 66, a third party claimant to property in a replevin action was made a party to the suit and we held that the rights of such third party might be adjudicated as against both plaintiff and defendant and both would be bound thereby.

Judgment affirmed.

Mr. Chief Justice Francis E. Bouck not participating.

Mr. Justice Otto Bock dissents.