IRVING SNYDER, DOING BUSINESS UNDER THE FIRM AND STYLE OF DENVER CAR & TRUCK MARKET, APPELLANT, V. HARRY LINCOLN, DOING BUSINESS UNDER THE FIRM AND STYLE OF LIBERTY CAR COMPANY, ET AL., APPELLEES.

55 N. W. 2d 614

Filed November 21, 1952. No. 33180.

*Levin & Brodkey,* for appellant.

*Wear & Boland,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action in replevin whereby the plaintiff seeks to gain possession of a Chevrolet automobile from the defendants Harry Lincoln, doing business as the Liberty Car Company of Omaha, Nebraska, and Chauncey Eugene Wilson. A jury was waived and the case tried to the court. The trial resulted in a judgment dismissing the petition and a finding that defendant re-

cover from plaintiff the sum of $2,200 plus interest in the amount of $550 and the costs of the action. Plaintiff appeals.

This is a third appeal. The two former appeals were disposed of by opinions of this court. Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483; Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749. The general factual situation is recited in those opinions and will not be repeated here except as necessary in dealing with the assignments of error relied upon. The defendant Lincoln was dismissed as a party defendant at the close of the second trial. No appeal was taken from that order. It became final as to him.

Appellant operated the Denver Car & Truck Market in Denver, Colorado. On Saturday, August 30, 1947, a stranger came to appellant's place of business to buy an automobile. After finding one he liked he stated he desired to show it to his wife who was staying at some distant point in the city. The stranger, who gave his name as R. Bryan Owen, gave a check for $2,499, the full purchase price of the car. Owen was then permitted to drive the car away. It was approximately 3 p. m. The banks were closed. Monday was Labor Day and consequently a bank holiday. The car was never returned. The check was worthless, a fact which was discovered when it was presented for payment on September 2, 1947. The details of the transaction, the conflicting stories told by appellant, and his conduct following the loss of the car are meticulously set forth in the opinion on the second appeal. The primary issue is, of course, whether or not the car was sold to R. Bryan Owen with the intention of conveying the title thereto.

There can be no doubt that the law of Colorado is applicable to this part of the transaction. We held in the second appeal of this case that the Colorado law is: "A purchaser of an automobile in that state may acquire title without complying with the law thereof on the subject of the transfer of title of motor vehicles. Non-

compliance may subject the buyer to a penalty, but his title to the vehicle, the subject of the sale, is not affected by his omission or violation." After a rehearing this statement was adhered to by this court. Appellant again challenges the correctness of this holding. This he is not permitted to do. It has become the law of the case under numerous decisions of this court. In re Estate of Shierman, 132 Neb. 45, 270 N. W. 841; De Lair v. De Lair, 148 Neb. 393, 27 N. W. 2d 540; Floyd v. Edwards, 152 Neb. 673, 42 N. W. 2d 292.

Appellant devotes considerable space in his brief to the proposition that his evidence is direct and uncontroverted, and far more worthy of belief than that of appellee. These are questions to be determined by the trier of the facts which in this case was the court, a jury being waived. There is evidence in the case which, if believed, would sustain a finding that appellant sold the car to Owen with intent to convey the title. He accepted Owen's check and permitted him to drive the car away. It is possible that appellant did not consider the sale completed because the details as to a written title had not been completed. This does not preclude a finding under the rules announced in the opinion on the second appeal that appellant intended to pass the title and accepted a check for $2,499 as payment for the car. Appellant attempted to cash the check. If it had been paid could anyone doubt that the sale would have been considered consummated? The conduct of appellant and exhibits offered in evidence tend to sustain appellee's position. It is true that some of this evidence was discredited, as was some that was offered by the appellant. The weighing of the evidence was for the court, and its finding in a jury case will not be interfered with where there is competent evidence to support it. Western Land Roller Co. v. Schumacher, 151 Neb. 166, 36 N. W. 2d 777; Foltz v. Brakhage, 151 Neb. 216, 36 N. W. 2d 768. The evidence was substantially the same on this trial as at the second. On appeal, after the second trial, the judg-

ment was reversed and the cause remanded for a new trial because of errors occurring during the trial to the jury. This is in effect a holding that the case was one for the jury. Kline v. Metcalfe Construction Co., 148 Neb. 357, 27 N. W. 2d 383. In fact it was specifically held in the second appeal as follows: "The challenge of appellant to the sufficiency of the evidence to justify and require the submission of this case to the jury to determine whether he had made a sale of the automobile to Owen, or whether he had come into possession of it as appellant claims by larceny, cannot be sustained." We do not depart from that conclusion. There is evidence to sustain the trial court's findings and, there being a conflict of evidence, we cannot say that the trial court was wrong. Albers v. Ziegler, 151 Neb. 408, 37 N. W. 2d 590.

The appellant contends that, even if this court concludes that the evidence is sufficient to support a finding that appellant had actually sold and delivered the automobile to Owen but was induced to do so by Owen's fraud in giving a "no-account" check in payment of the same, still under the law of Colorado the legal title to the automobile did not pass to Owen. The law of Colorado seems to be that where property is sold to be paid for in cash on delivery and the buyer pays for the same with a bad check, no title to the property passes to the purchaser. First State Bank v. Kohl, 79 Colo. 620, 247 P. 571; Johnston v. First Nat. Bank, 108 Colo. 188, 115 P. 2d 56. Even though this be true, it is still a question of fact as to whether or not the sale was for cash. The evidence shows that appellant's salesman said to Owen that only cash or a certified check would be acceptable as payment. But there is evidence that Owen was permitted to take the car when he left a check that was not certified in payment for the car. There can be little doubt under the evidence adduced that, if the check had been paid when the bank opened on the Tuesday following, the sale would have been considered complete. We think there is evidence to sustain the finding of

the trial court that appellant, or someone acting for him, accepted the check as payment and did not insist upon cash or a certified check before the car was delivered. If this be so, the rule announced in the Colorado cases would not be controlling. But in any event, the question was decided by the former appeal wherein it is said: "If Owen obtained the car from appellant by a sale induced by fraud, and as a result thereof title passed to Owen, and thereafter appellee was an innocent purchaser of and acquired the title thereto, he took it free from any right of appellant to rescind the sale and reclaim the automobile. * * * In other words, if after the seller delivers possession to the buyer pursuant to a sale induced by the buyer's fraud the property has passed into the hands of a bona fide purchaser for value, the right of the original seller to recover the property is lost. Snyder v. Lincoln, *supra;* Uniform Sales Act, § 69-424, R. R. S. 1943; 46 Am. Jur., Sales, § 471, p. 635." Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749. See, also, Sullivan Co. v. Larson, 149 Neb. 97, 30 N. W. 2d 460. These holdings demonstrate the lack of merit in this contention.

The record shows that the defendant Lincoln obtained a Nebraska certificate of title to the car in question which he later assigned to the defendant Wilson. In this connnection it is argued that Blixt v. Home Mutual Ins. Co., 145 Neb. 717, 18 N. W. 2d 78, stated the then existing rule interpreting section 60-105, R. R. S. 1943, the Nebraska automobile certificate of title law, and that it is quoted with approval in the opinion on the first appeal of the present case to this court. Pending further litigation the case of Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913, was decided by this court in which the court receded from the statutory interpretation announced in the Blixt case. Appellant contends that the pronouncement in the first appeal became the law of the case irrespective of the court's change of position in the Loyal's Auto Exchange case. In support of this contention appellant cites, among

others, the following cases: Gaines v. Rugg, 148 U. S. 228, 13 S. Ct. 611, 37 L. Ed. 432; Anthon State Bank v. Bernard, 198 Ia. 1345, 201 N. W. 59; In re Estate of Wecker, 123 Neb. 504, 243 N. W. 642. We do not think it is necessary to determine this point. In Loyal's Auto Exchange, Inc. v. Munch, *supra*, we said, in effect, that a purchaser who receives possession of an automobile without obtaining a certificate of title thereto, in accordance with the statute, acquires no title or ownership therein. We did not say that the possession of a certificate of title was an absolute muniment of title. A thief with a certificate of title to a stolen automobile does not divest the owner of his right to take it wherever he can find it. A certificate of title is essential to convey the title to an automobile, but it is not conclusive of ownership. It is simply the exclusive method provided by statute for the transfer of title to a motor vehicle. It conveys no greater interest than the grantor actually possesses. Consequently, the point here raised does not become important in the present case. If the rule in the Blixt case is the law of the case, the question for determination becomes one of fact which has been determined adversely to appellant on conflicting evidence. If the rule in the Loyal's Auto Exchange case applies, the right of an owner to recover his stolen automobile remains open to him.

Appellant asserts that appellee Wilson was not an innocent purchaser of the automobile under the evidence because of his knowledge of suspicious facts and circumstances sufficient to put him upon inquiry. No evidence has been pointed out to us that is any different on this question than it was on the second appeal. In the opinion in the second appeal we said: "Appellee was an innocent purchaser of the automobile and the district court correctly instructed the jury to that effect." In the absence of new evidence substantially bearing upon the issue, we hold that this question was determined by the former appeal and cannot again be litigated here.

Bohmont v. Moore, 141 Neb. 91, 2 N. W. 2d 599; Glissmann v Bauermeister, 149 Neb. 131, 30 N. W. 2d 649; Floyd v. Edwards, *supra*.

Appellant contends that the trial court erred in admitting certain exhibits in evidence. We must point out, in this connection, that the case was tried to the court without a jury. It is presumed that if incompetent evidence was received the court disregarded it in evaluating it for the purpose of arriving at its conclusion. The controlling rule is: In an action at law, tried to the court without a jury, the erroneous admission of evidence is immaterial on appeal where the judgment below is sustained by sufficient competent evidence. In re Estate of Black, 125 Neb. 75, 249 N. W. 84; Elmcreek Ditch Co. v. St. John, 127 Neb. 253, 255 N. W. 16; Thomas v. Sheldon Co., 137 Neb. 181, 288 N. W. 546.

The evidence in the present case was presented in great detail. There was new evidence in the record such as that tending to show that Owen and Pearson were one and the same person. But the evidence adduced did not have the effect of changing the issues in the case or our previous holding that the case was one for the jury. We think the case is for affirmance for the reasons herein stated.

AFFIRMED.